Oral argument is 15 minutes for petitioners, 15 minutes to be shared by respondents. Mr. Torczynski for the petitioners. Thank you, Your Honors. May it please the Court. I'm Jason Torczynski and I'm here on behalf of the Georgia, Tennessee, and New York Republican Parties. I'd like to start with essentially at least four ways that I think the Court can find for us. First, the Court could find that the approval exceeded the authority of the SEC and the MSRB to regulate campaign finance. The Court could find that the approval violated the First Amendment in total following the Supreme Court's recent precedence in the area. The Court could find that the approval order must be construed to be inapplicable to federal campaign contributions or the federal candidacies of state and local officials because administrative agencies may not encroach on FECA's complex statutory scheme. Or the Court could find that the approval violated the continuing resolution and must be overturned. And I just want to update the Court. The rider that expired April 28th was continued for a week last week and is contained again for another six months in the bill that passed the House of Representatives overwhelmingly yesterday and is widely expected to pass the Senate today and be signed by the President before midnight tomorrow. Well, if you don't mind, why don't we talk about standing first? Sure. I mean, this seems, frankly, to be a closer-run issue than it probably needed to be in this case. I mean, you're basing standing, I guess, on these three affidavits. Is that correct? Your Honor, the affidavits are in support of the standing, but I think the standing of the political parties is on a couple of different bases. One, we have direct – As an evidentiary matter, the affidavits are what you have. Is that correct? Yes, that is correct, Your Honor. Okay, go ahead. So there is direct harm to the political parties. The MSRB and the SEC don't dispute the fact that the goal of these rules and the effect of these rules is to reduce contributions to the political parties and their candidates. Don't you have to sort of get beyond that commonsensical speculation or whatever you might want to call it and give us some evidence that satisfies Lujan that these things, in fact, are going to happen? Well, Your Honor, I think if you look at what the U.S. Supreme Court did in taxation with representation with respect to the group saying that the tax status made the group fear that it was going to receive less contributions or the standing of the ACLU of New York in Buckley v. Vallejo where their standing was their fear of the loss of donations, that was enough in those two cases for the Supreme Court to find that those groups had standing. And here, the affidavit – What was enough in those cases? The fear of loss of future contributions. And here, the affidavits from the executive directors of the state parties and the chairman from Tennessee make clear that that's the case here. In other words, the parties fear that this rule and the expansion of this rule will reduce the amount of future contributions received, and that's been found to have enough – that's enough to give the parties direct standing, never mind the associational standing where there is no doubt that there are state and local officials who are covered officials under these rules who will receive less contributions as a result of this rule. That's self-evident. The rule is a political contribution, ban or prohibition, depending on whether or not you can vote for the candidates. Okay, I'll look at those cases. Okay. So I think standing is fairly clear, again, either because of associational standing or because of the direct harm to the political parties. So turning next to the authority of the SEC and the MSRB. There's just nothing in the Exchange Act or Dodd-Frank that permits the SEC or the MSRB to regulate campaign finance. And the rule is an impermissible prophylaxis upon prophylaxis in violation of the Supreme Court's decision. What do you think is your best argument out of these four? Is it really that this is beyond the purposes that the Board is empowered to further? Is that your best argument or is it the constitutional argument? Your Honor, I think the constitutional argument obviously would trump any other argument if the Court accepts our constitutional argument because any other statutory argument would be assumed in the constitutional argument. So I think the constitutional argument is probably our strongest. Next is probably that the agency exceeded its authority under the Exchange Act. And third is the agency is here using its essentially executive authority to try to trample on or constrain what the Congress laid out in FECA and set up the contribution levels for candidates for federal office and federal political contributions. Your brief focuses a lot on the effect that the amendment to G37 would have on candidates for federal office. Yes. What about candidates who are just seeking to retain their, say, local offices  Why isn't the rationale here fairly commonsensical and also supported by some of the same bases that supported the original rule as it applied to dealers? Sure. I think there are a couple of responses for that. One, in the history of everything that's happened since Blunt and in the entire record, there is absolutely nothing that the SEC or the MSRB have brought forward where a municipal advisor has made an otherwise lawful political donation in the last 23 years that has led to a pay-to-play scandal. Every single case that they have, that they have cited to in their record and in their supplemental appendix that talks about where they allege that there are pay-to-play issues involving campaign contributions, none of them have been in this sector. Second, none of the ones that involve solely campaign contributions have been found to be a violation. In other words, the cases that have led to problems, which of course are already covered by other laws leading to the prophylaxis upon prophylaxis problem, have all involved things that were either illegal under existing campaign finance law or illegal under other laws such as bribery statutes. Most of the cases that involved campaign contributions also involved other illegal payments, gifts, travel, things like that that went well beyond campaign finance. So I would say that what we have that's sort of similar here is this court's decision in the Lavin case where the state of Ohio tried to prohibit Medicaid providers from making contributions to candidates for attorney general or prosecutor. I mean, I understand why you want to cite that case. I'm not saying it's irrelevant, but boy, I mean, the theory there was pretty silly as compared to the theory that making a, say, $2,700 contribution to some local official would have no effect on or would potentially affect the official's decision about whom to hire for advisory services. Your Honor, I also want to make clear, the $2,700 that we talk about over and over again in our brief is the contribution limit to candidates for federal office. Somebody running for city council in a city that has a $500 contribution limit would not be subject to the federal $2,700 limit in their city council race. So there's two different sets of regulatory regimes in the campaign finance area. You've got the federal levels. I mean, I wasn't suggesting otherwise. Right, but I guess what I'm saying is, Your Honor, this is the only set of regulations where an administrative agency, in this case a couple of the financial regulatory agencies, including the MSRB in this case, have used administrative authority to cut back on or limit campaign contributions. All of these other cases where there are either contractor bans or other contribution limits that have been challenged, they've always been legislative judgments. What about Blount? Well, again, Blount was also the original G37 rule. Exactly what I was going to ask. That was an administrative decision to implement this change. It was an example of an administrative decision that was involved in the original G37. Is that right? Yes, Your Honor, and I think that the problem with Blount is that the subsequent Supreme Court campaign finance jurisprudence in Randall v. Sorrell, in Nixon v. Shrinkpack, talks about how the courts need to defer to legislative judgments. There's no legislative judgment present here. This is the judgment of bureaucrats who have never run for office deciding what appropriate campaign contribution limits are as opposed to legislators who run for office deciding what appropriate campaign finance contribution limits are. It might even be better, then. I'm sorry? It might even be better, then, not to have the legislators themselves deciding. Well, except the legislators are the ones that actually have experience with the campaign finance system. Here what you have are people from essentially the municipal bond community saying, oh, well, we should limit campaign contributions. Well, that's not up to the municipal bond community. That should be up to the legislators. So what – your briefs cover so many issues, but what do you think is the fatal flaw here that warrants overturning the decision? Well, I don't think you – well, I think there are ways to – if the court does not want to come up with a decision that in some way conflicts with Blunt, the one piece of all of this that has never been decided by any court is whether these regulations can limit what Congress laid out in FECA with respect to federal campaign contributions. In other words, in Galliano, the D.C. Circuit opinion by then Circuit Judge Ruth Bader Ginsburg, the Postal Service tried to apply its broad anti-fraud authority to prohibit what was – or punish what was otherwise permissible under FECA. And Judge Ginsburg, then Judge Ginsburg, said in her opinion that the agency with the broad anti-fraud authority can't encroach on Congress's carefully crafted scheme in FECA for regulation of federal campaign contributions. Here you – You would have us decide this case on a basis that would knock out – that would be precedent to knock out the entirety of G37. Is that fair? That's one option. Another option – No, I mean, I'm saying that's the implication of your argument. Well, no, I'm saying that there are a couple different ways the court could – You're saying that it's just completely beyond the SEC's authority to approve anything affecting campaign contributions, then that would mean this whole thing's invalid. That is one of our arguments. But how can we do that given Blunt being a Supreme Court case? We have to say that the whole tenor of the arena has changed because of these other decisions that you've mentioned. Blunt was not a Supreme Court case. It was a D.C. Circuit opinion that was decided before the Supreme Court decided FEC v. Davis, McCutcheon v. FEC, Randall v. Sorrell, and Nixon v. Shrinkback. And let me just point out, if the court doesn't want to go as far as essentially coming up with a decision that says Blunt was – was decided wrong, the court should look very carefully at this question of the federal campaign contributions because no court has ever addressed this. What you've got is an administrative agency setting up a system that changes what Congress laid out for federal campaign contributions and contributions to the federal accounts of the political parties and essentially saying, well, if you are – like I'll give you a great example. In Georgia, in the special election that was held in April, there was a city councilman who was running for Congress. That city councilman was subject to a different contribution limit for people from this industry than all of his opponents who were not incumbent local officials. And the Supreme Court in FEC v. Davis said that the court has never approved a system that permitted differing contribution limits to candidates for the same office. And if you look at what FECA has done in the preemption cases with state laws, any time a state has tried to impose a limitation like a session ban or a government contractor ban, the federal courts have been clear that FECA preempts and what Congress laid out for federal elections in FECA is what needs to control. And here you've got an administrative agency trying to use broad general anti-fraud authority like the Postal Service did in Galeano to try to constrain or prohibit what Congress otherwise found to be permissible for federal elections. And you set up a situation where you've created unequal contribution limits in violation of the Supreme Court's decision in Davis v. FEC. And I see that my time has expired, but I have reserved three minutes for rebuttal. Thank you. May it please the court, my name is Daniel Straselski. I represent the Securities and Exchange Commission. As the court is aware, I can discuss only the jurisdictional issue before the court today. If the court has any questions on other things, then Mr. Phillips can address those. How much time are you splitting up? Evenly, but of course I'm here as long or as short as the court. We'll see how many questions we have jurisdictionally. I'm not going to be encroaching upon the presiding judge, but go ahead. Of course, Your Honor. With respect to jurisdiction, this is really a very unusual case because what's happened is Congress has hamstrung the commission, and that has had the effect of hamstringing this court. And that's because of the funding restriction. The commission never issued any order. It didn't make any decision. It has provided no reasoning for the court to review regarding the MSRB's rule. And as a result, there's just no commission action or order that you can review under Section 25 of the Exchange Act. It would be pretty extraordinary if a federal regulation or rule could putatively violate somebody's First Amendment rights, and there would be no way for that person to petition the federal courts for relief. Wouldn't that be pretty remarkable? I mean, we do think this is a very unusual case. We think from a policy. Isn't it so remarkable that even under some Supreme Court authority, I think there's a case, Bowen or something like that, where the court had said that actually might be unconstitutional to deprive somebody of a forum to make that claim?  There will be review at the enforcement stage. And, of course, the... It's not terribly helpful in First Amendment cases. And I appreciate that from a policy perspective, this is not a satisfying result, but it's really the consequence of the system that Congress has mandated, and Congress is perfectly free to change the system. How about with the text of the rider that you're focused on? It says, regulation rule or order regarding contribution limits, something? Or order regarding the disclosure of political contributions. Right. And so your theory is that if you had rejected, if the SEC had rejected the rule, that would then be an order regarding disclosure, whatever that end part was? Is that the theory? Yes, Your Honor, because there's no way for us to reject the rule without issuing an order. Right. And I guess my question would be, you know, we always have to read things in context. And so you have regulation rule or order. Why shouldn't we apply, you know, that canon that says you sort of look to the company that a word keeps? Those other two words, regulation or rule, in that context are clearly talking about something that's prescriptive. And why wouldn't we read order to have the same character in that context? In which case you could, you would be free to reject, because that would not be an order of that character. Let me answer this way, Your Honor. I mean, I understand that perhaps the court could go that way. We certainly did not feel in a position to second-guess Congress. This isn't a statute that Congress delegated to us to administer. And as we point out, under the Anti-Deficiency Act, we risk very serious administrative, civil, even criminal consequences for that. Okay. I mean, I've kind of stated my concerns. It's almost inconceivable to me that there's no federal court forum for a claim like this. I mean, I'm just scratching my head about that. And I appreciate that it's not a satisfying result, but it's a result that Congress can fix. In the Federal Election Campaign Act, as we point out in the brief, Congress does provide for a review of agency inaction. There's a bill pending in Congress right now that would respond to the situation in the public citizen case. You're saying it hasn't fixed it here. It has not fixed it here, but plainly this is an area that Congress pays attention to, as evidenced by the Appropriations Act restriction. But if I may just give the site so the court has it, it's the Fair Rates Act, H.R. 587, and that's the pending bill in Congress that would respond to the public citizen decision from the D.C. surrogate involving FERC, and it would provide for review when an agency doesn't act. The other thing that I think is important to keep in mind is that this is a very, again, unique situation. I'm aware of only this rule that has become effective in this way. There have been roughly 3,000 rules that have been submitted to the Commission for review by the self-regulatory organizations. This is the only one that has become effective through the Commission's inaction. And I think the court should keep in mind that as much as the result here is unsatisfying, I think if you go the other way, it raises very difficult questions of its own because you really upend how courts review agency action. That's the point that the court made in Sprint Nextel. It's also the point that this court made in the Mullis decision. And I guess finally, if the court is looking for other alternatives to get into a court, I can't promise any other ways. There's potentially an avenue where the petitioners could approach the Commission and ask. This would have to happen after the Appropriations Act Rider expired. And they would petition the Commission under Section 19C of the Exchange Act and ask the Commission to review the MSRB's rule. So that would be a petition for rulemaking. I mean, I think potentially there's some kind of path in the district court through some type of declaratory judgment action, although I can't promise that that would necessarily succeed either. But again, this is the consequence of a system that Congress mandated, and we believe that the court should dismiss the petition for lack of jurisdiction. Thank you. Good morning, Your Honors. Carter Phillips for the Municipal Securities Rulemaking Board. I think my task is slightly easier than my friends'. I'm not asking the court not to decide this case because of Section 25 of the Securities Exchange Act. I do think there's a serious question as to whether or not the plaintiffs have standing. Judge Kethley, you asked the question. If you go back and read Taxation with Representation, you will find that standing in that case was based on the organization's tax-exempt status having been denied. And that's a clear injury. What Lujan tells you you have to do is identify a real and immediate threat. And the vague affidavits that have been put into this case and the single individual whom they've identified, who is himself not a municipal advisor, tells me that, candidly, there is no immediate, there's no real threat out there, there's no evidence of any indication of any problems that exist under these circumstances. Couldn't we read that part of the affidavit about Mr. McManus as expressing an immediate intention or, you know, sort of but for this regulation, I would be contributing money, as opposed to someday I'm going to go see the crocodiles and wherever they are? The problem with that is that he's not a municipal advisor within the meaning of the rule, even on the face of his own affidavit. Is he a dealer? Yes, he is a dealer. He was already subject to the rule prior to this time. And, in fact, he says, the rule. He doesn't talk about the extension of the rule. So they don't have anybody in that category. And, in truth, this is a very modest extension of who was covered under G37 previously. So it's not shocking, candidly, that there may not be anybody who has an interest, frankly, in eliminating this rule because everybody else may be perfectly comfortable with it. The question I wanted to have is just can you count heads on how many people this would affect? Well, there are 4,000 registered municipal advisors out there. And there may be a few other entities that probably ought to have registered. We don't know that. But, you know, realistically, it's a very small number of individuals and entities that are covered by this particular advance. So, Mr. Phillips, would you say then that really what they need is an individual who is an advisor who says, but for this impediment, this G37, I would contribute in the next cycle, I would have contributed in the last cycle, something like that? I think something along those lines. And I think they would probably even have to go further and find that I was going to contribute to someone whom I'm confident was going to run for federal office because it seems to me, at least on the statutory part of their argument, that turns almost exclusively on FECA. And if it's still, if we're just talking about campaigns that involve nothing but state and local officials running for state and local offices, FECA's got nothing to do with that. So they don't have anybody withstanding to raise that statutory, the constitutional issue, yes, but not the statutory argument. Do you think they would have to have state and intention to vote for sort of each category, I mean, I'm sorry, to contribute to candidates from each category, federal, state, local, in order for those? Well, I don't know whether you need state and local, I think if you had either state, I think you could probably get away with state or local. Do you think you would need a separate affidavit or separate representation as to federal? If you're going to make an argument that it violates the statute, I would take it to be a separate claim. Surely there are such people, even if the affidavit doesn't match up with those people. I don't know, Judge Moore. I'm not 100% sure that the answer to that question is yes, not as though they hadn't had a fair amount of time to find someone willing to come forward and say, yes, this is what I'd like to do. And it's not as though we didn't point out to them early on in this process that we thought that there was an inherent flaw in what they have put forward. They haven't supplemented anything. They haven't made any effort to bring someone forward who would satisfy the standing requirements. And I would ask the court before it takes on an important statutory and constitutional issue to be absolutely convinced that there is, in fact, somebody out there with an immediate threat to their rights that's being violated under these circumstances. On the question of the authority of the board to do what it did here, it seems to me at least absolutely clear, first of all, the extraordinarily broad grant of authority to the board to take actions to protect the integrity of the markets is undeniable. This is designed squarely to do that. It's already been done in the past. It's been upheld by the D.C. Circuit in Blount. So I don't think there's a... What about their argument that otherwise there has not been any instance when an agency or a board, here it's a board, has promulgated such a rule that it should be up to Congress? Well, I've never heard... The Supreme Court certainly never said that only agencies can restrict campaign finance, but more to the point here. This is not... Particularly as it applies in this context in the extension of municipal advisory, nobody can seriously doubt that Congress envisioned that the board would do precisely what the board has done. When it passed the Dodd-Frank Act, the Senate report couldn't be any clearer in saying the reason we're delegating this authority to the board is because the board has undertaken to adopt G37 and has rules in place to comprehensively regulate this. And so all we want them to do, essentially, is take those regulations and extend them to the municipal advisors in order, again, to create a level playing field within the securities markets. This is not an effort to invade the Federal Election Commission or federal law in any meaningful sense. This is an effort to try to regulate the securities markets and place municipal advisors on the same plane that you place dealers and every other type of advisor under this statutory scheme. Congress knew what it was doing. It delegated that authority. I know of no doctrine that says that an agency cannot fulfill its obligations as stated to it by Congress or that somehow Congress itself has to take that final step. And I would ask the court not to adopt that kind of a rule because that would be an extraordinary decision. And then, finally, you get to the First Amendment, and as you rightly acknowledge, Judge Kethledge, I'm sure why Lavin comes up in the context, but it does seem to me that that's a vastly different case. Yeah, I mean, I do see the difference that I've described, but at the same time, I would say that it seems that the evidentiary basis that the government has here, the board has for the extension, is quite thin. And that was a problem in Lavin. I would say two things. In Lavin, it was beyond quite thin. It was nonexistent. So, I mean, that takes thin to another level. Whereas I think if the court looks carefully at Apps 68 and 69 and the supplemental appendix at 322 and 323, the board carefully identified a number of instances, primarily of situations where people would now be defined as municipal advisors, who were otherwise probably being regulated, but who nevertheless engaged in improper action. So you have some direct evidence of concern and concerning behavior. But, again, it seems to me you go back to Blount, and it's very difficult from my perspective to... Blount is a different era in the law on this issue, though. Isn't that fair to say? It is a different era in some respects, although Blount treated that as strict scrutiny, which, it seems to me, if anything would have required a stronger showing. And what Judge Williams said in that context is, you know, you're talking about a situation where common sense tells you that if you're a government contractor of some sort and the opportunity presents itself to pay, to get a bunch more money from the government, you're going to seize that opportunity if there's any possibility of doing it. And so I don't need the smoking gun. But isn't that really the precise area where the law has changed, that the cases are more demanding of a showing that goes beyond even sort of commonsensical conjecture? Nixon? Yes and no, I suppose. I mean, I don't know of any case that sort of goes as far except Lavin, which, of course, is legitimate because there was no evidence in that circumstance. And again, it seems to me... I don't think we were an outlier in Lavin, right? No, no, I mean to suggest that it was... Right, it's not the only one out there that says you have to have some... Right, you have to have some evidence. But the truth is, in this case, the Board identified a series of very specific instances of behavior that looks very much like what we're talking about and does exactly what Congress has asked it to do, which is to extend the restriction in a way that logic demands. I mean, you know, to me, whatever else is out there with respect to campaign finance regulation, Wagner is probably the clearest evidence that the law has not changed dramatically because federal contractors are still... There's tons of evidence in that case about corruption with federal contractors. I mean, it was just, you know, pouring out of that case, the evidence there. Right, but the restriction there, to me at least, is a total ban. It's pretty much a de facto total ban, a $250 that you can give to whomever you vote for. I mean, that's... Well, one, that's part of it, but the other thing is, and you're only putting a penalty box for two years. It's not as though you're out of the business for all time as a consequence of that. Can I ask one more question? It would seem to me that the analysis here, I mean, as you know, we have to ask whether the government has demonstrated that the limits are closely drawn to match a sufficiently important interest. And it seems to me here that perhaps the analysis under that standard would be different for the different kinds of candidates. I mean, state and local, the briefs kind of talk past each other to some extent. They're focused on federal candidates. Your brief is focused on the rationale for local candidates. It would seem to me that the rationale and the basis that you inherit from the original G37 is strongest when an advisor is giving money to a local official. You know, if you're giving $2,000 to a local official, that could be a lot of money in one of those races. And the quid pro quo rationale is really strong because that's the person who might be making that decision. It seems more attenuated with the federal official. That's somebody who's trying not to have that job anymore, which would attenuate the quid pro quo sort of just common sense, blount rationale. And federal elections are more expensive, and $2,000 might be a drop in the bucket there, whereas for some official in, say, Newark, New Jersey, that's a big chunk of money. Why wouldn't the analysis be different for the federal official? Well, at the end of the day, you have no guarantee that the federal official is going to end up becoming a federal official. So the problem is what you're trying to avoid is when at the end of the day that person ends up as a state and local official, and the gift that was given is a pretty big number, and you happen to be a municipal advisor. So I guess my basic position on that is while it's less immediately direct, it is nevertheless a serious problem, and there's no way that I can think of to effectively deal with it unless you're going to say that you have to give up your state and local job and walk away from it for all time. And clearly that's not something within the board's authority, and I doubt seriously that Congress wants to get in the business of telling people they can't do this or that. It seems to me it's certainly much less of a federalism problem that's posed by simply saying, look, if you want to run for federal office, that's fine, but if you retain your state and local position, and you may well be in that position six months from now, then just simply don't take contributions from municipal advisors under these circumstances. That's a pretty minor restraint, Your Honor. All right. Thank you, sir. Thank you. Your Honor, from where we sit, from where the state parties stand, the impact of this on federal elections is major. This impacts the ability of people in this industry to contribute to the federal accounts of the state parties. It also impacts the ability of these individuals to contribute to the federal campaigns of state or local officials. Half of Congress has been elected directly from state or local office. Half of the current executive branch was elected directly from state or local office, where these rules applied to the presidential campaign for one party, but not to the presidential campaign for the other party, because they happen to be a non-incumbent official and an incumbent U.S. senator. And I also want to point out that while the MSRB says, oh, well, you know, what the D.C. Circuit upheld in Wagner is exactly what we have here, it's not exact. What the federal government contract or prohibition prohibits these days is the contributions by people who have direct service contracts with the federal government from giving while they're negotiating their contract or performing their contract. There's no two-year ban. It's only while you're performing the contract. And it does not apply to employees of government contractors or the PACs of federal government contractors. So Boeing, Raytheon, I mean, you name the largest government contractors in the country, they are some of the largest PACs, and some of their employees give more than the employees of lots of other firms. And Congress has no problem with that. Yet here the MSRB is saying, well, you know, some of us in our administrative capacity think that we know better than Congress when it comes to setting contribution limits even to candidates for federal office. And that can't possibly be the case. What about the standing taxation without representation? If they were actually denied an application or their application was denied, I mean, that, you know, that's a lot, that's as concrete as it comes. That's not just we have a fear. Well, Your Honors, I would say a couple of things. One, this is the election law area where the capable repetition of debating review is a common basis for reviewing things like contribution. That's usually somebody who has had a concrete injury, but it's over with, and there's nothing we can do to help them. Mr. Phillips suggests that we needed to have brought forward someone who wants to contribute to somebody in the future. Most candidates for 2018 aren't even announced yet. I mean, maybe the incumbents are there. To find somebody who says, I'm an advisor, I would have given money to, you know, these candidates in the last race. I want to give money going forward. I can't. I mean, that's the bunny hill. It's not Mount Everest. Well, but it's more difficult. When you only have 60, if we had five years to bring a claim under the Administrative Procedure Act, there aren't many people out there. Which is what we tried when New York and Tennessee were in front of the D.C. District Court and then the D.C. Circuit and got kicked out on the procedural thing. You only have 60 days from the time that these rules are finalized to file the application. And then, you know, even when we filed that, it still took almost a year to actually get from the time we filed to the hearing. So it's actually more difficult than Mr. Phillips suggests to go do that. But the whole point of this rule is to reduce contributions to political parties and its candidates. For them to say that there's no possibility of future harm borders on absurd. Their whole point is to reduce contributions. I mean, that's not the standing rule either. There might be plenty of people being harmed, but I don't know. I mean, we just need to get beyond speculation. Anyway, I've expressed my concern on that one. And I see my time has expired. Thank you very much. Thank you. Thank you all for your argument.  Would the clerk call the next case, please?